IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOSEPHINE D. ROGERS,

    Plaintiff,

v.                                CV 112-194

ERIC K. SHINSEKI, Secretary,
Department of Veterans Affairs,

    Defendant.

**O R D E R**

Presently pending before the Court is Defendant's Motion to Dismiss. (Doc. no. 15.) Upon due consideration, this motion is **GRANTED IN PART**.

**I. BACKGROUND**

**A. Factual Background**[1]

This is an employment discrimination case that arises from Plaintiff's employment as a registered dietician at the Department of Veterans Affairs ("VA") Medical Center in Augusta, Georgia. (Compl. at 5.) Plaintiff alleges that she was discriminated against on February 6, 2009, due to her husband's

---

[1] For the purpose of this motion, the Court recites and accepts as true the facts stated in the Complaint. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). As a preliminary note, the Complaint contains a rambling recitation of facts and random excerpts of various documents from Plaintiff's administrative proceedings. The Court will piece together a factual background as best as it can.

disability. (Id.) It appears that Plaintiff's husband had been visiting her during work hours. (Id.) On February 6, 2009, her supervisor, Sheri Loflin, came into her office and asked her personal questions about her husband. (Id.) Ms. Loflin asked about her husband's status as a veteran and where he lived. (Id.) Plaintiff "felt uncomfortable" and contacted her union. (Id.) Plaintiff's union representative told Plaintiff and Ms. Loflin that her husband could visit for short periods of approximately five minutes and during lunch breaks, as long as it did not interfere with her work. (Id.) Ms. Loflin did not respond to the union representative's suggestions. (Id.) On October 13, 2010, Ms. Loflin gave Plaintiff a letter about having a frequent, personal visitor. (Id.) Plaintiff contends the letter is evidence of "continuous harassment." (Id.)

Plaintiff was also involved in a dispute regarding "coverage." (Id. at 6.) There was a policy or informal practice where dieticians would cover for each other when out of the office. (See id.) On three occasions, Plaintiff turned down requests to cover for other dieticians. (Id.) Plaintiff believes she was justified in denying the requests and unfairly reprimanded by Ms. Loflin. (Id.) She "believe[s] favoritism was shown here," as she was not given an equal opportunity to prioritize her work. (Id.)

On September 13, 2010, Plaintiff met with Ms. Loflin to get more information about an assignment. (Id. at 7.) Ms. Loflin

2

failed to give her the requested information. (Id.) Plaintiff did not feel adequately prepared to complete the assignment. (Id.) Ms. Loflin stated that if Plaintiff was uncomfortable with completing the assignment, Ms. Loflin could not make her do it. (Id.) Following this meeting, Plaintiff believes she was retaliated against as shown by the following incidents: (1) on September 13 and 20, 2010, Ms. Loflin sent Plaintiff emails asking for a "yes or no" answer to a question; (2) on September 21, 2010, Plaintiff met with the Chief of Employee Relations, Albert Ward, and Mr. Ward did not follow up after the meeting;[2] (3) on September 27, 2010, Ms. Loflin threatened to write Plaintiff up for insubordination when Plaintiff did not give her a "yes or no" answer; (4) on September 29, 2010, Plaintiff brought up coverage at a staff meeting, and Ms. Loflin stated that it was a personal matter that should not be discussed at the meeting; (5) Ms. Loflin reprimanded Plaintiff for bringing up coverage at the meeting and discussed Plaintiff in a negative manner with other employees; (6) on September 30, 2010, Plaintiff submitted a proposed schedule for rotating coverage, and Ms. Loflin did not respond; (7) on October 20, 2010, Ms. Loflin issued a performance appraisal that did not give Plaintiff credit for the tremendous amount of work she did throughout the year; and (8) by the time Plaintiff had initiated

---

[2] Plaintiff later found out that Mr. Ward communicated with Ms. Loflin the day after the meeting. (Id. at 8.) Plaintiff "felt betrayed," "set up," and "not treated fairly." (Id.)

3

an administrative proceeding, the VA was working against her. (Id. at 7-8.)

On November 11, 2010, another supervisor, Jean Yarsawich, informed Plaintiff that coverage of Plaintiff's area while off-duty was not Plaintiff's responsibility. (Id. at 8.) Ms. Loflin, however, used "administrative force" to make it appear that this coverage was Plaintiff's responsibility. (Id.) Ms. Loflin "continued to harass" Plaintiff with threatening emails, notes, and tracking Plaintiff down in the hallways. (Id.) On November 23, 2010, Plaintiff found a hard-copy of an email that had been slipped under her door and had what appeared to be lipstick smears on it. (Id. at 6.) Plaintiff was startled and bewildered. (Id.) On December 15, 2010, Plaintiff sent Ms. Yarsawich an email requesting to be reassigned to a supervisor other than Ms. Loflin. (Id. at 8.) Ms. Yarsawich did not respond. (Id.) On December 17, 2010, Plaintiff was placed on suspension for ten days without pay. (Id. at 9, 13.) On January 31, 2011, Plaintiff alleges she was "constructively discharged" and "forced to retire." (Id. at 14.)

Plaintiff also mentions that, back in 2008, Ms. Yarsawich was hired over Plaintiff for the Clinical Manager position. (Id. at 8, 11-12.) Plaintiff believes she was not promoted because she is black and Ms. Yarsawich is white. (Id. at 8.) Plaintiff alleges that she had more experience than Ms. Yarsawich. (Id.) Similarly, Plaintiff alleges that, in 2008,

4

she had more experience than Ms. Loflin (who is white), and she believes she was not promoted into Ms. Loflin's position because of her race. (Id. at 8, 11-12.)

B. **Procedural History**

1. *Administrative Proceedings*

On October 5, 2010, Plaintiff contacted the VA's Equal Employment Opportunity ("EEO") Counselor. (Id. at 2.) On December 30, 2010, Defendant submitted a formal Administrative Complaint to the VA. (Id.) On February 21, 2011, Plaintiff sent the VA's Office of Resolution Management a letter indicating that she only wanted to pursue a claim for racial discrimination. (Id. at 12.) On February 24, 2011, the VA's Office of Resolution Management sent Plaintiff a notice that some of her claims were being accepted for investigation and others were being denied as untimely. (See id. at 11-21.)

On December 7, 2011, an Administrative Law Judge ("ALJ") held an evidentiary hearing on Plaintiff's claims. (Id. at 30-35, 53.) On January 30, 2012, the ALJ entered judgment against Plaintiff on all her claims. (Id. at 27-29.) On March 8, 2012, the VA entered a final order adopting the ALJ's decision as its own. (Id. at 44-46.) On April 6, 2012, Plaintiff appealed to the Equal Employment Opportunity Commission ("EEOC"). (Id. at 3, 39-42) On September 27, 2012, the EEOC affirmed the VA's final order. (Id. at 51-56.) On September 29, 2012, Plaintiff received a right-to-sue notice from the EEOC. (Id. at 3.)

### 2. *Federal Action*

On December 21, 2012, Plaintiff, proceeding pro se, filed suit in this Court, alleging what the Court liberally construes as claims for: (1) associational disability discrimination under the Rehabilitation Act,[3] (2) racial discrimination (based on the non-promotions in 2008) under Title VII, and (3) retaliation.[4] (See Compl. at 5-9.) With some direction from the Court, Plaintiff served Defendant on May 17, 2013. (See Doc. no. 16.) On July 17, 2013, Defendant moved to dismiss the case. (Doc. no. 15.) After the parties briefed the motion to dismiss (doc. nos. 19, 21, 22), the Court directed the parties to supplement the record with Plaintiff's Administrative Complaint and other informal correspondence which might have affected the scope of the VA's investigation. (Doc. no. 33.) Plaintiff filed the

---

[3] Plaintiff used a form Title VII Complaint. (Compl. at 1.) However, the Rehabilitation Act, 29 U.S.C. §§ 791 et seq., provides the exclusive remedy for federal government employees asserting work-place disability discrimination claims. See Van Durr v. Geithner, No. 1:11-CV-227, 2012 WL 2890449, at 1 n.1 (N.D. Fla. June 8, 2012) (construing federal employee's pro se disability discrimination action as falling under the Rehabilitation Act), report and recommendation adopted, No. 1:11-CV-227, 2012 WL 2890346 (N.D. Fla. July 16, 2012). Generally, the Rehabilitation Act utilizes standards applied under the Americans with Disabilities Act ("ADA"), as well as certain procedures found in Title VII. See 29 U.S.C. §§ 791(g), 794(d), 794a(a)(1). The Rehabilitation Act recognizes claims for discrimination based on the known disability of family members and other associational relationships. 29 C.F.R. § 1630.8; see, e.g., Walthall v. Fulton Cnty. Sch. Dist., 18 F. Supp. 2d 1378, 1386 (N.D. Ga. 1998).

[4] Retaliation claims are available under both Title VII and the Rehabilitation Act. See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 791(g); 42 U.S.C. § 12203(a).

requested documents in compliance with the Court's Order.[5] (Doc. no. 34.) The motion to dismiss is now ripe for adjudication.

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a

---

[5] In the Order to supplement the record, the Court directed the parties to notify the Court within 21 days if there was any objection to the authenticity of the supplemental documents or the Court's consideration of those documents at the motion-to-dismiss stage. (Doc. no. 33 at 3.) To date, neither party has filed an objection.

7

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## B. Pro Se Pleading Considerations

The Court recognizes that Plaintiff is proceeding in this matter pro se. Therefore, her pleadings should be liberally construed. See GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998). However, this leniency does not give a court license to serve as de facto counsel for a pro se party or to rewrite an otherwise deficient pleading in order to sustain an action. Id. Pro se litigants are still required to meet certain essential burdens. See Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Also, there is a general rule in the Eleventh Circuit that "[w]hen it appears that a pro se plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the pro se plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice." Jemison v. Mitchell, 380 Fed. Appx. 904, 907 (11th Cir. 2010) (citing Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991)). "Dismissal with prejudice is proper, however, if the pro se plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim." Id.

## III. DISCUSSION

### A. Administrative Exhaustion Requirements

"Under Title VII and the Rehabilitation Act, federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act."[6] Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008). "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies."[7] Id.

Further, a plaintiff's judicial complaint is limited by the scope of the investigation which can reasonably be expected to grow out of the administrative complaint. See Mullins v. Crowell, 228 F.3d 1305, 1312 (11th Cir. 2000) (applying this exhaustion requirement to federal employees' claims under Rehabilitation Act). Judicial claims are proper if they "amplify, clarify, or more clearly focus" the allegations in the administrative complaint, but "allegations of new acts of discrimination are inappropriate." Thomas v. Miami Dade Pub. Health Trust, 369 Fed. Appx. 19, 22 (11th Cir. 2010) (quotations

---

[6] "This requirement is not a technicality; rather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment." Grier v. Sec'y of Army, 799 F.2d 721, 724 (11th Cir. 1986) (quotations omitted).

[7] The requirement of timely contact is similar to a statute of limitations and thus subject to waiver, estoppel, and equitable tolling. Canaday v. Wynne, No. 5:09-CV-8, 2010 WL 1957512, at *4 (N.D. Fla. Apr. 29, 2010), report and recommendation adopted, 2010 WL 1957505 (N.D. Fla. May 14, 2010). None of these issues have been raised here.

9

omitted). An administrative complaint prepared without the assistance of counsel should be construed liberally. See Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (determining that EEOC charge for racial and sexual discrimination could reasonably have been expected to give rise to investigation of retaliation).[8]

Administrative exhaustion is a condition precedent to bringing a discrimination action in federal court. See Goodridge v. Astrue, No. 1:07-CV-1918, 2008 WL 8691093, at *1-2 (N.D. Ga. Mar. 20, 2008). Once a defendant has specifically and with particularity raised the exhaustion issue in a motion to dismiss, the plaintiff bears the burden of proving that the condition precedent has been satisfied. Id. at *2-3; Scott v. City of Brunswick, No. 2:11-CV-119, 2012 WL 2562422, at *4 (S.D. Ga. June 29, 2012).

### B. Associational Disability Discrimination Claim

The Court has thoroughly reviewed Plaintiff's Administrative Complaint.[9] (Doc. no. 34 at 35-43.) Plaintiff

---

[8] See also Jerome v. Marriott Residence Inn Barcelo Crestline/AIG, 211 Fed. Appx. 844, 846 (11th Cir. 2006) (determining that pro se plaintiff's EEOC charge for non-promotion did not reasonably encompass claim for disparate pay); Wills v. Postmaster Gen., 300 Fed. Appx. 748, 750 (11th Cir. 2008) (determining that pro se plaintiff's racial discrimination claims based on suspension and termination were not reasonably related to racial harassment claim in EEOC complaint); Woods v. Gen. Motors Acceptance Corp., 97-0502-CB-S, 1998 WL 757966, at *3-4 (S.D. Ala. May 26, 1998) (determining that claim of sex discrimination did not reasonably grow out of claims for racial and disability discrimination), aff'd, 189 F.3d 485 (11th Cir. 1999).

[9] The Court may consider facts outside of the pleadings in resolving motions to dismiss discrimination claims for failure to exhaust administrative remedies where - as here - the parties were given sufficient opportunity to develop the record. Tillery v. U.S. Dep't of Homeland Sec.,

10

expressly alleged claims for sexual harassment, color discrimination, nonsexual harassment, reprisal, racial discrimination, and religious discrimination. (See id.) Within her claim for sexual harassment, Plaintiff stated, inter alia, that (1) an employee asked her questions about her past relationships with men, (2) her supervisor made comments and wrote a letter concerning her husband's visits to the office, (3) her supervisor asked if her husband was a patient at the VA Medical Center, and (4) her husband is a veteran who has appointments and friends at the VA Medical Center. (Id. at 37-38.) Although Plaintiff indicated that her husband had appointments at the VA Medical Center and that her supervisor asked about his status as a *patient*, Plaintiff did not indicate that her husband was *disabled* within the meaning of the ADA and Rehabilitation Act. Moreover, these facts were buried within a claim for sexual harassment. This is not reasonably sufficient to trigger an administrative investigation into disability discrimination.

Moreover, on February 3, 2011, Plaintiff sent the VA Office of Resolution Management an amended version of her Administrative Complaint. (See Doc. no. 34 at 73-82.) In the

---

402 Fed. Appx. 421, 424 (11th Cir. 2010) (citing Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008)). Additionally, the Court may consider the Administrative Complaint without conversion into a motion for summary judgment because its authenticity is undisputed and administrative exhaustion is an essential prerequisite to Plaintiff's federal discrimination action. See Chesnut v. Ethan Allen Retail, Inc., No. 3:13-CV-112, 2013 WL 5290123, at *3-4 (N.D. Ga. Sept. 20, 2013); Perrymond v. Lockheed Martin Corp., No. 1:09-CV-1936, 2010 WL 987218, at *5-6 (N.D. Ga. Feb. 3, 2010).

cover letter, Plaintiff stated: "I only want to file the complaint on the basis of race (Black)." (Id. at 73.[10]) Similarly, on February 21, 2011, Plaintiff sent the VA Office of Resolution Management another Amended Administrative Complaint. (Id. at 83-93.) In the cover letter, Plaintiff stated: "I've come to the conclusion that the main issue is Race. Please note that I only want to file the Complaint on the basis of Race (Black)." (Id. at 83; see also Compl. at 12.[11])

Considering these clear and unequivocal directives, the scope of the VA's investigation could not reasonably be expected to encompass associational disability discrimination. Therefore, Plaintiff failed to exhaust her administrative remedies.[12] Further, because the time to properly exhaust her administrative remedies has long since passed, Plaintiff's associational disability discrimination claim is hereby **DISMISSED WITH PREJUDICE**.

---

[10] Again, the Court may consider this document without converting the motion to dismiss. See supra note 9; see also Judkins v. Saint Joseph's Coll. of Maine, 483 F. Supp. 2d 60, 62 (D. Me. 2007) (determining that EEOC charge and other EEOC documents could be considered on a motion to dismiss).

[11] Plaintiff included with her judicial Complaint a notice from the VA Office of Resolution Management's Regional EEO Officer that stated: "[O]n February 21, 2011, you indicated you only want race (Black) listed as the basis for the alleged discrimination. Accordingly, only race will be listed as the basis for the alleged discrimination." (Compl. at 12.) Pursuant to Federal Rule of Civil Procedure 10(c), exhibits to the Complaint constitute part of the pleadings and may be considered at the motion-to-dismiss stage. FTC v. AbbVie Products LLC, 713 F.3d 54, 63 (11th Cir. 2013).

[12] Given the Court's conclusion that Plaintiff's disability discrimination claim exceeds the reasonable scope of her administrative filings, it is unnecessary to address Defendant's alternative argument that Plaintiff did not initiate administrative review of her disability claim within 45 days of the discriminatory act. (See Doc. no. 15 at 7.)

## C. Racial Discrimination Claim

Plaintiff alleges that she was not promoted on the basis of race in 2008. (Compl. at 8, 11-12, 15.) Plaintiff did not contact the VA's EEO Counselor until October 5, 2010. This contact falls well outside the requisite 45-day charging period, and the claim is therefore barred for failure to exhaust administrative remedies. Shiver, 549 F.3d at 1344. Accordingly, Plaintiff's claim for racial discrimination under Title VII (based on non-promotion in 2008) is hereby **DISMISSED WITH PREJUDICE**.

## D. Retaliation Claim

Unlike the previous claims, Defendant does not argue that the retaliation claim is barred for failure to exhaust administrative remedies. Rather, Defendant contends that Plaintiff has failed to state a plausible claim for retaliation. (See Doc. no. 15 at 5-6, 7-8.) "To make a prima facie showing of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered adverse employment action; and (3) that there is 'some causal relation' between the two events."[13] Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1268 (11th Cir. 2010). Regarding the third

---

[13] Although a Title VII plaintiff need not allege facts sufficient to make out a prima facie case, she "must provide enough factual matter (taken as true) to suggest discriminatory retaliation." Marshall v. Mayor & Alderman of City of Savannah, Ga., 366 Fed. Appx. 91, 100 (11th Cir. 2010) (quotations omitted). "It follows that the plaintiff must allege facts which suggest that a prima facie case [of retaliation] might be proven." Turner v. McKesson Corp., No. 2:12-CV-2053, 2013 WL 4727651 (N.D. Ala. Sept. 3, 2013).

13

element, the protected activity and the adverse action cannot be "wholly unrelated." McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008). Thus, at a bare minimum, the protected conduct must have preceded the adverse employment action, and the decision-maker must have been aware of the protected conduct at the time he or she took the adverse employment action. Id.; accord Williams, 2013 WL 1130741, at *6.

The basis for Plaintiff's retaliation claim is unclear. Plaintiff alleges that, on September 13, 2010, she had a meeting with Ms. Loflin about an assignment that she did not feel adequately prepared to complete. (Compl. at 7.) Plaintiff then proceeds to chronicle various incidents of alleged retaliation that followed the meeting during September and October 2010. (See id. at 7-8.) Critically, there is no allegation that Plaintiff engaged in any protected activity[14] at the September 13, 2010 meeting.[15]

---

[14] See 42 U.S.C. § 2000e-3(a) (defining protected activity under Title VII); 42 U.S.C. § 12203(a) (defining protected activity under ADA), as incorporated by 29 U.S.C. § 791(g) (Rehabilitation Act).

[15] See Enadeghe v. Ryla Teleservices, Inc., No. 1:08-CV-3551, 2010 WL 481210, at *8-9 (N.D. Ga. Feb. 3, 2010) (determining that pro se plaintiff's complaints did not constitute protected activity under Title VII's opposition clause where Plaintiff failed to allege that her underlying complaints about noise and touching were related to race); Turner v. McKesson Corp., No. 2:12-CV-2053, 2013 WL 4727651, at *8-9 (N.D. Ala. Sept. 3, 2013) ("Here, [in regards to protected activity], plaintiff merely alleged that she complained to her supervisor about being denied an interview; there is no allegation that she complained she was being denied an interview *because* she was white. . . . As defendant has observed, the Amended Complaint itself indicates that plaintiff could have been complaining because there was personal animosity between herself and [her manager]. Moreover, based on the facts alleged, plaintiff could have been complaining because [the applicant hired] was less experienced, less educated, an outside hire, or even because plaintiff had wanted the position herself. Without any allegations that plaintiff was complaining about racial discrimination, the court cannot find that plaintiff

Moreover, assuming that the protected activity at issue is Plaintiff's October 5, 2010 contact with the VA's EEO Counselor, Defendant notes that the majority of the alleged retaliatory incidents occurred in September 2010 and cannot have been motivated by subsequent protected activity. (See Doc. no. 15 at 7-8.) The Court agrees that the protected conduct must precede the retaliatory action. If the October 5, 2010 contact is indeed the protected activity at issue, any causal connection to events in September is temporally impossible.[16] Further, if the adverse employment action at issue is Plaintiff's October 20, 2010 performance appraisal, December 17, 2010 suspension, or January 31, 2011 forced retirement, Plaintiff has not alleged that any decision-maker was aware of Plaintiff's October 5, 2010 contact with the EEO counselor. This is also grounds for dismissal.[17]

---

has alleged that she engaged in any protected activity." (citations omitted)).

[16] See Uppal v. Hosp. Corp. of Am., 482 Fed. Appx. 394, 397 (11th Cir. 2012) ("[Plaintiff] had already lost her emergency room (ER) privileges *prior* to sending the July 2008 letter. Therefore, this initial loss of ER privileges cannot be causally related . . . ."); Foster v. Select Med. Corp., No. 6:11-CV-1234, 2012 WL 1415499, *6-7, *11 (M.D. Fla. Apr. 24, 2012) (dismissing retaliation claim without prejudice where basis of claim was unclear and pro se plaintiff did not allege that protected conduct preceded the adverse action).

[17] See Uppal, 482 Fed. Appx. at 397 (affirming district court's dismissal of retaliation claim where plaintiff did not "allege that the decision-maker who deemed her to have voluntarily resigned was aware of the letter, thus failing to allege any kind of causal relationship between the protected conduct and the adverse employment action"); Enadeghe, 2010 WL 481210, at *9-10 (granting motion to dismiss retaliation claim because pro se plaintiff "d[id] not identify the individual who made the decision to terminate her in her Complaint, and she d[id] not allege that the decisionmaker was aware that she complained about any discriminatory conduct").

15

In summary, the Court is unable to discern the factual basis for all three elements of retaliation: the protected activity, the adverse employment action, and the causal link. However, Plaintiff drafted the Complaint pro se, and there is at least some possibility that a more carefully drafted complaint might state a claim. See Jemison, 380 Fed. Appx. at 907. Accordingly, Plaintiff's retaliation claim is **DISMISSED WITHOUT PREJUDICE**, and the Court will grant Plaintiff leave to file an Amended Complaint.

**E. Repleading Instructions**

If Plaintiff chooses to file an Amended Complaint, she must carefully plead her claims in short, plain statements, as required by Rule 8(a), and address the pleading deficiencies identified in this Order. "The Court will no longer guess Plaintiff's intentions and will not scour the Complaint for facts to support each claim. . . . The Court advises Plaintiff that if [her] amended complaint fails to comply with the Federal Rules and Local Rules and the issues addressed in this Order, the Court may dismiss this action with prejudice." Foster, 2012 WL 1415499, at *11.

Additionally, Plaintiff may only file an Amended Complaint if she can certify that "to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or

16

needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." See Fed. R. Civ. P. 11(b).

Finally, in light of the ruling that Plaintiff's claims for associational disability discrimination under the Rehabilitation Act and for racial discrimination under Title VII (based on the non-promotions in 2008) are dismissed *with prejudice*, Plaintiff shall not include these claims in her Amended Complaint, should she choose to file one.

### IV. CONCLUSION

Based upon the foregoing, Defendant's Motion to Dismiss (doc. no. 15) is **GRANTED IN PART**. Plaintiff's claims for associational disability discrimination under the Rehabilitation Act and for racial discrimination under Title VII (based on the non-promotions in 2008) are **DISMISSED WITH PREJUDICE**. Plaintiff's claim for retaliation is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is advised that she may file an Amended Complaint in compliance with the Court's repleading instructions within **twenty-one (21) days** of this Order. Failure to do so may

17

result in dismissal of this action in its entirety. If an Amended Complaint is filed, Defendant shall have **twenty-one (21) days** to plead or otherwise respond. The Court's previous deadline for the parties to file motions for summary judgment (doc. no. 37) is hereby **TERMINATED**, and the Court will set a new deadline if and when necessary.

**ORDER ENTERED** at Augusta, Georgia, this ___18th___ day of March, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA