IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JOSEPHINE D. ROGERS, | * |
| Plaintiff, | * |
| v. | * CV 112-194 |
| ERIC K. SHINSEKI, Secretary, Department of Veterans Affairs, | * |
| Defendant. | * |

**O R D E R**

This matter is before the Court on Defendant's Motion to Dismiss. (Doc. 46.) In this action, Plaintiff Josephine D. Rogers, a former registered dietician at the Department of Veterans Affairs ("VA") Medical Center in Augusta, Georgia, alleges her supervisors harassed her and retaliated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

On March 18, 2014, the Court granted Ms. Rogers leave to file an amended complaint. Ms. Rogers timely filed her amended complaint on April 25, 2014 (Doc. 41), to which Defendant filed a Motion to Dismiss in lieu of an answer (Doc. 46). Ms. Rogers did not respond to Defendant's motion within fourteen days and thus, pursuant to this Court's Local Rules, the Court could have deemed the motion unopposed. L.R. 7.5, SDGa. Recognizing, however, that Ms. Rogers is proceeding *pro se* and did file a Motion for Default

Judgment within the fourteen-day window, the Court issued an Order on October 8, 2014 granting Ms. Rogers ten additional days in which to respond to the instant motion to dismiss.[1] In a timely, one-page filing, Ms. Rogers has responded that "[a]ll parties are aware that Plaintiff has not been privy to the content of the Motion to Dismiss," and she cites two articles from The Augusta Chronicle, published in July, that report on the prevalence of retaliation complaints across the country at VA facilities. (Doc. 54.) She cites no other facts relevant to the claims set forth in her Amended Complaint and no legal authority in opposition to Defendant's motion.

The Court again finds Ms. Rogers' filing fails to address the merits of the motion presently before the Court, but the Court is not inclined to continue granting Ms. Rogers second and third opportunities given her persistent confusion about the duties of litigants before this Court and Defendant's consistent flexibility in response.[2] Indeed, although plaintiffs who act pro se are "held

---

[1] The Court denied Ms. Rogers' Motion for Default Judgment. (Docs. 47, 52.) Further, as the default motion only addressed Ms. Rogers' erroneous belief that Defendant did not answer or otherwise respond to her Amended Complaint, the Court did not interpret it as being responsive to the Motion to Dismiss currently under the Court's consideration. (See Doc. 53.)

[2] Ms. Rogers responded similarly to Defendant's first motion to dismiss (Doc. 15). In two lines, she remarked, "Plaintiff is responding to the motion by the defendant to dismiss the case. Plaintiff opposes this motion. Also, on July 26, 2013 Plaintiff received the Order from Judge Brian K. Epps to proceed with the case." (Doc. 17.) Ms. Rogers' ultimately filed a substantive response (Doc. 19) and sur-reply (Doc. 22) after Defendant advised Ms. Rogers in its Reply that "she ha[d] misconstrued the [Magistrate Judge's] July 26, 2013 Order" and that she "must address [the substantive grounds] if she does not agree that her case must be dismissed for the reasons asserted by Defendant" (Doc. 18). On account of Ms. Rogers' apparent ability to produce substantive argument in response to Defendant's first dispositive motion, which she obtained electronically through the Court's filing system, the Court expects no different at this stage. Additionally, Defendant represents to the Court that he served the motion to dismiss and

2

to a less stringent standard" than attorneys and their pleadings "will, therefore, be liberally construed," those same plaintiffs have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998); Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) (internal quotation marks omitted). But in consideration of Ms. Rogers' *pro se* status and this Court's strong policy of determining cases on the merits, the Court proceeds to evaluate Defendant's motion for dismissal in the context of Ms. Rogers' two claims: retaliation and constructive discharge.

## I. LEGAL STANDARD

The Court must construe the pleadings of a complaint broadly and in the light most favorable to the plaintiff in reviewing a motion to dismiss. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007). At this stage, the Court tests for legal sufficiency, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a plaintiff is not required to provide "detailed factual allegations" to survive a motion to dismiss, the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v.

---

brief on Ms. Rogers twice at her address of record, and has not received any correspondence from Ms. Rogers requesting an additional copy. (Def.'s Reply, Doc. 55, at 1-2.)

Twombly, 550 U.S. 544, 555 (2007). Simply put, the court need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

As the Court previously noted, when plaintiffs act *pro se*, the pleadings are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 637 (11th Cir. 2010).

## II. DISCUSSION

The Court previously outlined the facts of this case in thorough form in its March 18, 2014 Order. (Doc. 38 at 1-6.) A liberal reading of the Amended Complaint reveals two claims: (1) retaliation and (2) constructive discharge. The Court addresses each in turn.

### A. Ms. Rogers' Direct Retaliation Claims

To state a claim for retaliation under Title VII, the plaintiff must first establish a prima facie case. Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). If this prima facie case is met, a presumption of retaliation arises and the burden shifts to the defendant to "proffer a legitimate, non-retaliatory reason for the adverse employment action." Id. If the defendant sets forth such a reason, the presumption disappears

and the plaintiff must show that the reasons stated were merely a pretext. Id.; Masso v. Miami-Dade Cnty., 465 F. Supp. 2d 1260, 1265 (S.D. Fla. 2006).

"A prima facie case of retaliation contains three elements: 'first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression.'" Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002) (quoting Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999)). In determining whether activity is statutorily protected, the Supreme Court and Eleventh Circuit have recognized two categories of activity: "An employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-3(a)).

When proceeding under the opposition clause, a plaintiff need not prove the underlying discrimination claim, but must demonstrate "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) (internal quotation marks omitted).

5

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented.

Id. at 1312 (quoting Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)).

Ms. Rogers alleges she participated in opposition activity when she initiated informal counseling with an Equal Employment Opportunity ("EEO") representative on October 5, 2010 and again when she filed a formal administrative complaint with the EEO on December 30, 2010. (Am. Compl., Doc. 41, at 1.) She premises her direct retaliation claim on the assertions that she received (1) a "Fully Successful" performance rating on October 20, 2010, which was lower than the previous year and (2) a ten-day suspension notice on December 17, 2010. Further, without any additional context or details, Ms. Rogers states that on November 19, 2010, she "became aware that [her] supervisor, Sheri Loflin, was aware of [her] contact with the agency's EEO Officer." (Id. ¶ 7.)

### 1. October 20, 2010 Performance Evaluation

Ms. Rogers has failed to allege sufficient facts to make out a prima facie case of retaliation on the ground of a deficient performance evaluation. First, a rating of "Fully Successful" does not constitute an adverse employment action. "[E]mployee performance evaluations, which 'do not lead to tangible job consequences,' are not sufficient to form the basis of a

6

retaliation claim under Title VII." Batch v. Jefferson Cnty. Child Dev. Council, 183 F. App'x 861, 863 (11th Cir. 2006) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1241 (11th Cir. 2001)). Ms. Rogers merely asserts that the rating should have been higher, and that she "did not [receive] credit for the tremendous amount of work that [she] did throughout the year." (Am. Compl. at 20; id. ¶ 27; Compl., Doc. 1, at 7.) She has alleged *no* tangible consequences she suffered as a result of receiving the second highest performance rating available: no termination, demotion, reassignment, ineligibility for promotional opportunities, or loss of salary or benefits. Id.; Brown v. Snow, 440 F.3d 1259, 1265-66 (11th Cir. 2006) (internal citation omitted); Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 588 (11th Cir. 2000) ("An action, which . . . had no effect on an employee is not an 'adverse' action."), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see also Cain v. Geren, 261 F. App'x 215, 217 (11th Cir. 2008) (affirming the district court's finding that an employee's receipt of a "2" instead of a "1" was not an adverse employment action, as she did not present any evidence that the "2" rating had an adverse impact on her ability to receive a promotion, raise, or any other type of employment benefit); Odom v. Holder, No. 2:11-CV-3086-SLB, 2014 WL 1233709, at *22 (N.D. Ala. Mar. 25, 2014) (finding employee's "Excellent" rather than "Outstanding" performance review was not a materially

7

adverse action that would dissuade a reasonable employee from filing an EEO complaint).

Moreover, to satisfy the causal connection requirement of the prima facie case, at a minimum, Ms. Rogers must allege sufficient facts to show that her supervisors were actually aware of the protected expression *at the time they allegedly took the adverse employment action*. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997). Although such awareness may be established with circumstantial evidence, this Circuit requires plaintiffs to show an employer's awareness "with more evidence that mere curious timing coupled with speculative theories." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).

Ms. Rogers' sole allegation that *she* personally became aware on November 19, 2010 that Ms. Loflin — at some unidentified point in time — learned of her contact with the EEO counselor is indescript and unavailing. It is improper for the Court to make any assumptions about the proximity of events, and it will not retroactively impart awareness upon Ms. Loflin so as to satisfy Ms. Rogers' burden at the pleading stage. See Williams v. Cleaver-Brooks, Inc., No. 7:11-CV-144 HL, 2012 WL 6151141, at *14 (M.D. Ga. Dec. 11, 2012), aff'd, 529 F. App'x 979 (11th Cir. 2013).

2. **December 17, 2010 Suspension Notice**

As a second basis for her retaliation claim, Ms. Rogers points to the ten-day suspension imposed on December 17, 2010 by Jean

8

Yarsawich, Chief of Food and Nutrition Services, for her "deliberate refusal to carry out a proper order" on four occasions during the period of November 9 through November 22, 2010. (Am. Compl. §§ 13, 16; Doc. 34 at 30.) Here, too, Ms. Rogers fails to allege sufficient facts to make out a prima facie case of retaliation. There is no question that Ms. Rogers' suspension without pay constitutes an adverse employment action. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998) (holding that written reprimands and one-day suspensions constituted adverse employment actions for the purposes of a retaliation claim); Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 920 (11th Cir. 1993) (holding that a thirty-day suspension without pay was an adverse employment action); Evans v. Alabama Dep't of Corr., 418 F. Supp. 2d 1271, 1276-77 (M.D. Ala. 2005) (finding patrol officer's ten-day suspension without pay was "clearly" an adverse-employment action); Naia v. Deal, 13 F. Supp. 2d 1369, 1381 (S.D. Ga. 1998) (holding the plaintiff's two-week suspension without pay, written reprimand, and six-month probation term constituted adverse employment actions for Title VII purposes); see also Dickerson v. SecTek, Inc., 238 F. Supp. 2d 66, 80 n.11 (D.D.C. 2002) ("[C]ourts have almost uniformly held that a disciplinary suspension for which the employee is not compensated . . . amounts to an adverse employment action.").

Again, however, Ms. Rogers has failed to satisfy the causal connection requirement in her pleadings. Ms. Rogers' only

9

allegation setting forth supervisory awareness states that *Ms. Rogers* became aware on November 19, 2010 that Ms. Loflin — at some unidentified point in time — learned of her EEO counseling. The Court does not negate that the timeline is right as to the retaliatory suspension claim: resolving all inferences in Ms. Rogers' favor, Ms. Loflin was aware of Ms. Rogers' EEO activity at some point on or before November 19, 2010 and the VA suspended Ms. Rogers on December 17, 2010. Beyond the vague assertion addressing her own awareness, however, Ms. Rogers' does not allege any other substantiating facts, especially those which would implicate Ms. Yarsawich, who appears to have been ultimately responsible for her suspension. (Doc. 34 at 30-34.) See Enadeghe v. Ryla Teleservs., Inc., No. 108-CV-3551-TW, 2010 WL 481210, at *9 (N.D. Ga. Feb. 3, 2010) (dismissing retaliation claim because plaintiff "d[id] not identify the individual who made the decision to terminate her in her Complaint, and she d[id] not allege that the decisionmaker was aware that she complained about any discriminatory conduct"). Just as the Court will not strain to impart awareness upon Ms. Loflin, it will not extrapolate the pleadings to impart such knowledge on Ms. Yarsawich, who is not even named.

Furthermore, Ms. Rogers' pleading overall fails to support the proposition that her protected October expression and the December suspension were related in any tangible way. Farley, 197 F.3d at 1337 (reciting that plaintiffs are required to demonstrate only that the protected activity and the adverse action were "not *wholly*

10

*unrelated"* in a retaliation action) (citations and internal quotation marks omitted). Although "close temporal proximity" — in this case, approximately ten weeks — may be sufficient to state a claim in some cases, it is not dispositive standing alone. Id. The facts pled indicate that Ms. Rogers sought EEO counseling on October 5, 2010. (Am. Compl. at 1.) Over one month later on November 9, 2010, she refused to attend a meeting scheduled for the next day, and in fact did not attend. (Id. at 17.) The same cycle of behavior recurred three times, once on November 16, 2010 and twice on November 22, 2010. (See id. (noting that the supervisor "continued to schedule me to attend this meeting"; id. §§ 9, 28; Doc. 34 at 30.) These glaring facts do not suggest in the least that it was Ms. Rogers' EEO counseling, about which her supervisors questionably were aware, that precipitated suspension.

As Ms. Rogers has failed to allege sufficient facts to make out a prima facie case, the Court **DISMISSES** her direct retaliation claims.

B. **Ms. Rogers' Claim Based on Retaliatory Hostile Work Environment**

Ms. Rogers also alleges she suffered a series of twelve incidents of hostile work environment prior to her resignation on January 31, 2011.[3] In Gowski v. Peake, the Eleventh Circuit Court

---

[3] The EEOC identified twenty-four incidents in its comprehensive review of Ms. Rogers' claims, but only twelve occurred after Ms. Rogers' initial contact with the EEO counselor. (See Am. Compl. at 24-26.) As the protected conduct must precede the retaliatory action, the Court will not consider any conduct by Defendant that took place before October 5, 2010 in addressing Ms. Rogers' retaliatory hostile work environment claim.

of Appeals recognized a cause of action for retaliatory hostile work environment. 682 F.3d 1299, 1312 (11th Cir. 2012). For this Court to find that the Secretary of the Department of Veterans Affairs — through Ms. Loflin, Ms. Yarsawich, and/or Albert Ward — subjected Ms. Rogers to a hostile work environment in retaliation for her EEO activity, she must allege sufficient facts to establish that "the actions complained of were sufficiently severe or pervasive to alter the terms and conditions of employment, thus constituting an adverse employment action." Id. The requirement that the harassment be "severe or pervasive" contains an objective and a subjective component. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). "[T]o be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." Id. (internal quotation marks omitted). In evaluating the objective severity of the harassment, courts consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Among other incidents, Ms. Rogers alleges:

12

(1) On November 9, Ms. Loflin ordered Ms. Rogers to attend a meeting that began thirty minutes before her scheduled tour of duty, which she refused to attend (Am. Compl. at 17);

(2) Between November 9 and November 22, Ms. Rogers' supervisor continued to order her to attend the above-mentioned, regularly-scheduled interdisciplinary meeting and "formed her 'posse'" on e-mails as to this matter (Id.);

(3) On November 17, a co-worker slid patient profiles under Ms. Rogers' door for an upcoming meeting, and Ms. Rogers' called the VA Police "to handle" the documents and escort her to see Ms. Yarsawich because she "did not feel safe in her work environment" (Doc. 34 at 19);

(4) On the same day, Ms. Loflin advised the entire staff that Ms. Rogers would cover a co-worker's assignment (Am. Compl. at 20, 25);

(5) On November 23, 2010, Ms. Loflin slid an e-mail under Ms. Rogers' office door that gave her a direct order to attend a meeting for a co-worker (Id. ¶ 9);

(6) On the same day, and then again on November 29 and 30, 2010, Ms. Loflin "confronted [Ms. Rogers] several times in the hallways" and insisted that Ms. Rogers meet with her and Ms. Yarsawich about potential disciplinary action (Id. ¶ 10);

(7) On November 30, 2010, Ms. Loflin sent Ms. Rogers five e-mails with the subject matter "Proposed Disciplinary Action," which she did not open (Id. ¶ 11; Doc. 34 at 17);

(8) Ms. Yarsawich ignored Ms. Rogers' December 10, 2010 request to be reassigned to a new supervisor (Am. Compl. ¶ 12);

(9) On December 17, 2010, "with the assistance of the VA Police," Ms. Rogers' supervisor placed a "suspicious package" on her desk (Id. at 15);

(10) Ms. Loflin called Ms. Rogers on January 6, 2011 at home while she was "out on sick leave" and left a brief voicemail "requesting" that her call be returned; Ms. Rogers and her husband subsequently reported the voicemail message to the VA Police (Id. at 15; id. ¶ 15; Doc. 34 at 50, 51); and

13

(11) During her suspension without pay from January 19 to January 28, 2011, "illegal entries were made on [her] time card" to charge her with annual leave, which were later corrected (Am. Compl. ¶ 17; id. at 35).

The Court assumes that Ms. Rogers subjectively believed the actions described above amounted to severe and pervasive harassment, and her penchant to involve the police supports that. But Ms. Rogers' belief is not objectively reasonable. It is not even close.

Title VII prohibits discrimination; it "is not a shield against harsh treatment" or the "petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68; McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986) (citing Jackson v. City of Killeen, 654 F.2d 1181, 1186 (5th Cir. 1981)). Instead, Title VII is meant to address those abusive workplaces "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Ms. Rogers' own pleadings make clear (1) that she disagreed with her superiors as to how her job should be performed and how her co-workers should be managed, and (2) in response, she chose to disregard her supervisors' orders and attempts to communicate with her. Non-threatening, non-humiliating e-mails and requests limited to Ms. Rogers' apparent failure to cooperate and to fulfill work assignments do not objectively constitute severe conduct for which Title VII's anti-retaliation provision provides a remedy. Cf. Gowski, 682 F.3d at 1313-14 (finding hospital administration retaliated against two doctors who filed EEO complaints by

14

operating a targeted "campaign" over a period of years in which the they spread rumors about the doctors, attempted to malign them in front of their peers, solicited negative information about the doctors to build cases for termination, removed them from committees and projects, prohibited them from conducting research, limited their privileges and access to positions within the hospital, and gave them low proficiency ratings). Accordingly, Ms. Rogers' retaliatory hostile work environment claim must be **DISMISSED**.

C.  **Ms. Rogers' Constructive Discharge Claim**

To sustain a constructive discharge claim, Ms. Rogers must sufficiently allege that Defendant imposed working conditions so onerous that a reasonable person in her position would have been compelled to resign. Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1434 (11th Cir. 1997). The Court cannot consider Ms. Rogers' subjective feelings in evaluating such a claim, but rather employs a wholly objective standard. Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1450 (11th Cir. 1998). Further, the threshold for a constructive discharge claim is higher than that for a hostile work environment claim. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001). A plaintiff claiming constructive discharge must show "a greater severity or pervasiveness of harassment" such that resignation is the only reasonable response. See Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009).

Here, as Ms. Rogers' Amended Complaint fails to state a plausible claim for retaliatory harassment, it likewise fails to state a claim constructive discharge. Notwithstanding that there is a substantial question as to whether Ms. Rogers retired rather than resigned,[4] the conduct about which Ms. Rogers complains — that Defendant assigned her to cover meetings for co-workers, made frequent attempts to communicate with her, and ultimately suspended her on a temporary basis in response — does not suggest or indicate such objectively intolerable working conditions that would compel a reasonable person to resign. Courts in this circuit have failed to find that an employer constructively discharged plaintiffs in situations far more egregious than those alleged in this case. See Wingfield v. S. Univ. of Fla., Inc., No. 8:09-cv-01090-T-24-TBM, 2010 WL 2465189, at *9 (M.D. Fla. June 15, 2010) (listing cases); see also Dale v. Wynne, 497 F. Supp. 2d 1337, 1344 (M.D. Ala. 2007) (concluding that no constructive discharge occurred where supervisor only communicated with employee by email, told employee's peers that he needed to approve anything she did, and would not allow her to manage her subordinates). Ms. Rogers'

---

[4] Ms. Rogers' Amended Complaint avers that she "resigned from the agency, effective January 31, 2011." (¶ 18.) In her prayer for relief, however, Ms. Rogers appears to seek damages for delayed *retirement* payments, and notes that "upon *retirement*, my salary was at the GS-11, Step 8 level." (Id. at 6 (emphasis added).) During the administrative process, moreover, the ALJ found that Ms. Rogers' retired. (Id. at 35.) To the extent Ms. Rogers asserts the delay in payment of her retirement benefits was another retaliatory act, the Court finds she has not stated a claim. She appears to allege the delay was unintentional — due to "technicalities in the system" — and fails to allege that anyone involved in processing her paperwork at the VA or Office Personnel Management was aware of her protected expression. (See Am. Compl. at 6.)

16

constructive discharge allegations, therefore, are due to be **DISMISSED**.

### III. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 46) as to all remaining claims in the Amended Complaint. The Clerk is **DIRECTED** to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 4th day of November, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA